**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **ZENELLA JONES**, | Case No. |
| Plaintiff, | Judge |
| v. | **COMPLAINT FOR DAMAGES** |
| **SELECT PORTFOLIO SERVICING, INC.**, | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | |

Plaintiff Zenella Jones ("Jones" or "Plaintiff"), through counsel, for her *Complaint for Damages* against Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Jones is the owner of residential real property, located at and commonly known as 10516 Lee Avenue, Cleveland, OH 44106 (the "Home").

2.      Jones currently maintains the Home as her primary, principal residence, and has so maintained the Home for all times relevant to the allegations of the Complaint.

3.      Jones executed a promissory note (the "Note") as well as a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan"). *A copy of the Loan documents is attached as* Exhibit 1.

4.      SPS is a foreign corporation incorporated under the laws of the State of Utah that maintains its headquarters and principal place of business located in Salt Lake City, UT.

5.      SPS is the current servicer of the Loan and has acted in such capacity since on or about May 1, 2016.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7. This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

8. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

9. This action is filed to enforce statutory provisions of RESPA, as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* ("Regulation X").

10. Jones asserts claims for relief against SPS for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

11. The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

12. SPS is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

13. The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

14. SPS is subject to the requirements of RESPA and Regulation X, and SPS does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

15.     The Loan is secured by the Home which is Jones's principal residence. 12 C.F.R. § 1024.30(c)(2).

16.     Jones has a private right of action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17.     Jones also asserts statutory claims against SPS for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## STATEMENT OF FACTS

18.     The Loan matured effective December 16, 2024.

19.     At the time of the Loan's maturity, SPS claimed that funds in excess of $23,000 were still owed towards the Loan and were immediately due and payable.

20.     Believing that the Loan should not still have such a significant balance, Jones engaged counsel for representation to request information relating to the Loan and to investigate Defendants' errors in the servicing of the Loan.

21.     For all times relevant, SPS has designated the following address for receipt of requests for information and notices of error pursuant to 12 C.F.R. §§ 1024.36(b) and 1024.35(c) (the "Designated Address"):

> Select Portfolio Servicing, Inc.
> PO Box 65277
> Salt Lake City, UT 84165-0277

22.     On December 4, 2024, Jones, through counsel, sent the following pieces of correspondence, all classified as requests for information pursuant to 12 C.F.R. § 1024.36, to SPS at the Designated Address:

>     a.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36 including a request for a

3

payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3)" seeking information concerning the Loan, specifically an itemized payoff statement and the name, address, and contact information for the current owner or assignee, master servicer, and current servicer of the Loan ("RFI #1"); and

b.     Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items ("RFI #2").

Copies of RFI #1 and RFI #2 and tracking information evidencing delivery of RFI #1 and RFI #2 are attached as **Exhibit 2** and **Exhibit 3**, respectively.

23.     SPS received RFI #1 and RFI #2 at the Designated Address on December 10, 2024.. *See* Exhibit 2 and Exhibit 3.

24.     On or about December 23, 2024, attempting to continue to make good faith payments towards the Loan, Jones sent a cashier's check from Huntington (Check No. 2018290964) in the amount of $560.12 to SPS in an attempt to remit the amounts for a monthly payment towards the Loan for January 2025 (the "Attempted Payment").

25.     On December 27, 2024, SPS sent correspondence stating that it rejected the attempted payment because "[t]he loan is matured and the total amount due is required" (the "Rejection Letter") and that the Attempted Payment would be destroyed if the payment was via a "personal check". *A copy of the Rejection Letter is attached as* **Exhibit 4**.

26.     Rather than return the cashier's check along with the Rejection Letter and therefore the funds submitted to SPS, however, SPS only returned a photocopy of the check to Jones. *See*, Exhibit 4.

27.     SPS has claimed to Jones via telephone that it had destroyed the check, but did not provide any proof of the same.

4

28.     Since there is no proof from SPS that the check has been destroyed, the Borrower was unable to obtain a credit to her account for the funds represented by the cashier's check.

29.     On or about December 27, 2024, SPS set correspondence partially responding to RFI #1 (the "Owner Response") which incorrectly and misleadingly stated that RFI #1 was received on "12/14/2024" identifying the owner of the loan as U.S. Bank Trust Company, National Association, as Trustee, as successor-in-interest to U.S. Bank national Association, not in its individual capacity but solely as indenture trustee, for the holders of the CIM Trust 2021-R1 Mortgage-Backed Notes (the "Trust"). *A copy of the Owner Response is attached as* **Exhibit 5**.

30.     On or about December 31, 2024, SPS sent correspondence seemingly in response to the remainder of RFI #1 as well as a portion of RFI #2 (the "Payoff Response") and containing a payoff statement for the Loan dated December 27, 2024, a copy of the Loan documents, and a partial transaction history for the Loan[1]. *A copy of the Payoff Response is attached as* **Exhibit 6**.

31.     Through the Payoff Response, SPS failed to provide the servicing notes requested through RFI #2 as well as a complete transaction history for the Loan. *See* Exhibits 3 and 6.

32.     On or about January 15, 2025, Jones, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") to SPS at the Designated Address. A copy of NOE #1, without enclosures, and tracking information evidencing delivery of the NOE #1 is attached as **Exhibit 7**.

33.     Through NOE #1, Jones asserted that SPS committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to return the rejected funds from the Attempted Payment. *See* Exhibit 7.

---

[1] No transaction history was provided that covered the periods covering December 16, 2004 through March 31, 2008 or covering April 7, 2016 through October 4, 2023.

34.     SPS received NOE #1 at the Designated Address on January 22, 2025. *See* <u>Exhibit 7</u>.

35.     On February 4, 2025, SPS sent correspondence in response to NOE #1 to Jones (the "Response to NOE #1"). *A copy of the Response to NOE #1 is attached as* **<u>Exhibit 8</u>**.

36.     Through the Response to NOE #1, SPS stated that the funds from the Attempted Payment "were returned on December 26, 2024" and that "SPS found no error in the handling of the funds". *See* <u>Exhibit 8</u>.

37.     That is, through the Response to NOE #1, SPS wholly failed to address the allegation that the funds were not returned and that only a photocopy of the cashier's check was returned.

38.     On or about February 11, 2025, Jones, sent a notice of error pursuant to 12 C.F.R. § 1024.35 and request for information pursuant to 12 C.F.R. § 1024.36 ("NOE #2/RFI #3") to SPS at the Designated Address. *A copy of NOE #2/RFI #3, without enclosures, and tracking information evidencing delivery of NOE #2/RFI #3 is attached as* **<u>Exhibit 9</u>**.

39.     Through NOE #2/RFI #3, Jones asserted that SPS committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to RFI #2 and requested *again* that SPS provide the servicing notes and transaction history originally requested through RFI #2. *See* <u>Exhibits 3 and 9</u>.

40.     Additionally, through NOE #2/RFI #3, Jones requested that SPS provide:

   a.  An explanation of a documentation establishing the deferred principal balance of $8,329.52 claimed due and owing on the Loan;

      b.   Any "Adjustment to Contract Rate" as described in the Loan and for each such adjustment, please provide the date of the adjustment, and the interest rate to which the contractual interest rate was adjusted; and,

      c.   The start date and end date for each "period of delinquency" as defined in the "Adjustment to Contract Rate" section of the Loan Repayment and Security Agreement for the Loan.

*See* Exhibit 9.

41.     SPS received NOE #2/RFI #3 at the Designated Address on February 14, 2025. *See* Exhibit 8.

42.     On or about April 2, 2025, Jones, through counsel, sent a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #3") to SPS at the Designated Address. A copy of NOE #3, without enclosures, and tracking information evidencing delivery of the NOE #3 is attached as **Exhibit 10**.

43.     Through NOE #3, Jones *again* asserted that SPS committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to return the rejected funds from the Attempted Payment and that SPS failed to perform a reasonable investigation into NOE #1 as it failed to address the specific allegations that only a photocopy of the Attempted Payment was returned and that SPS has conflictingly stated on other occasions that the Attempted Payment was destroyed. *See* Exhibit 10.

44.     SPS received NOE #3 at the Designated Address on April 8, 2025. *See* Exhibit 10.

45.     SPS responded to NOE #2/RFI #3 via correspondence dated April 9, 2025 (the "Response to NOE #2/RFI #3"). *A copy of the Response to NOE #2/RFI #3, without enclosures, is attached as* **Exhibit 11**.

46.     Through the Response to NOE #2/RFI #3, SPS *again* failed to provide a complete transaction history for the Loan[2], and additionally failed to provide an explanation or documentation related to the deferred balance claimed due and owing and address the requests regarding the interest rates. *See*, Exhibit 11.

47.     SPS responded to NOE #3 via correspondence dated June 3, 2025 (the "Response to NOE #3") wherein it stated that it incorrectly advised that the Attempted Payment had been returned and that the Attempted Payment was "rejected and destroyed". *See*, a copy of the Response to NOE #3, attached as **Exhibit 12**.

48.     Through the Response to NOE #3, SPS now claimed that the Attempted Payment was destroyed per SPS policy as indicated in the Rejection Letter, but the Rejection Letter states that a check will be destroyed if it was a "personal check", not a cashier's check such as the Attempted Payment. *See* Exhibit 12.

49.     That is, through the Response to NOE #3, it is evident that SPS did not conduct a reasonable investigation or properly correct the error with the Attempted Payment as it is admitting that it destroyed a cashier's check without returning the funds for the same to Jones. *See* Exhibit 12.

50.     Jones has still not yet received a refund for the Attempted Payment that was wrongfully destroyed by SPS.

51.     Jones has not received a complete transaction history nor a proper explanation as to the interest rates charged on the Loan or the origin of the deferred principal balance of $8,329.52 claimed due and owing on the Loan.

---

[2] No transaction history was provided that covered the period covering December 16, 2004 through March 31, 2008

52.     Without this information, Jones is unable to properly ascertain whether the amounts claimed due and owing on the Loan, totaling more than $24,000, are properly due and owing.

53.     Nonetheless, Jones has started to receive threats of foreclosure from SPS which Jones reasonably believes is attempting to collect unwarranted and inflated amounts due and owing on the Loan.

54.     Moreover, due to the foreclosure notifications that SPS has sent to Allstate Property and Casual Insurance Company ("Allstate"), which provides homeowners insurance coverage to Jones, Allstate is stating that it will cancel her insurance policy effective August 13, 2025.

## IMPACT AND DAMAGES

55.     SPS has failed to provide basic information as to the amounts due and owing on the Loan to which Jones is entitled.

56.     Jones reasonably believes that SPS is attempting to collect unwarranted and inflated amounts due and owing on the Loan and its failure to provide the requested information has prevented Jones from verifying the same.

57.     Moreover, SPS has wrongfully failed to refund funds from the Attempted Payment to Jones despite multiple attempts by Jones to obtain the same.

58.     SPS's improper actions caused Jones to suffer from actual and proximate damages including, but not limited to:

   a.   Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Jones is personally obligated or which otherwise negatively impacts any equity in the Home to which she is entitled;

b. Harm to Jones's credit which would have been avoided had SPS properly serviced the Loan or mitigated had SPS acted appropriately in relation to the information request and error resolution processes for the Loan;

c. The loss of and loss of use of the funds from the Attempted Payment;

d. Legal fees, costs, and expenses to submit RFI #1, RFI #2, NOE #1, NOE #2/RFI #3 and NOE #3, in a good faith attempt to amicably resolve this matter or to have SPS mitigate the harm caused to Jones to which he did not receive proper or adequate responses; and

e. Severe emotional distress driven by SPS's wrongful conduct related to the and by justified fear that the current delinquency will result in an eventual foreclosure sale of the Home unless Jones agrees to pay for amounts she reasonably believes are not warranted, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**COUNT ONE:**
**VIOLATIONS OF RESPA, 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)**

**(Failure to properly respond to RFI #1, RFI #2, and NOE #2/RFI #3)**

59.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 58 in their entirety, as if fully rewritten herein.

60.     RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and more timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

61. "A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

62. "An information request is submitted by a borrower if the information request is submitted by an agent of the borrower." Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a).

63. A servicer must respond to a request for information by:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

64. Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

11

65.     A servicer does not have to comply with 12 C.F.R. § 1024.36(c) or 12 C.F.R. § 1024.36(d) if the servicer *reasonably determines* that the request seeks substantially the same information as a prior request, the information sought is confidential, proprietary, or privileged, the information is not directly related to a borrower's specific mortgage loan account, the request is overbroad or unduly burdensome, or the request is untimely. *See* 12 C.F.R. § 1024.36(f)(1).

66.     Moreover:

If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.

12 C.F.R. § 1024.36(f)(2).

67.     RFI #1, RFI #2, and NOE #2/RFI #3 (collectively, the "RFIs") each, in relevant part, constitute a request for information as defined by 12 C.F.R. § 1024.36(a), as it is a written request from Plaintiff that included their names, mortgage loan account number, and property address and requested information related to the Loan. *See* Exhibits 2, 3 and 9.

68.     Through RFI #1, Plaintiff requested information concerning the Loan, including the name, address, and contact information for the current owner or assignee. *See*, Exhibit 2.

69.     Through RFI #2, Plaintiff requested information concerning the Loan, including a transaction history of the Loan, escrow analyses, and information related to loss mitigation, among other items. *See*, Exhibit 3.

70.     SPS received RFI #1 and RFI #2 at the Designated Address on or before December 10, 2024. *See*, Exhibits 2 and 3.

71.     SPS failed to send a substantive response to the information request seeking the name, address, and contact information for the current owner or assignee contained in RFI #1 within ten (10) business days of December 10, 2024, that is, on or before December 26, 2024, in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E). *See* 12 C.F.R. § 1024.36(d)(2)(i)(A); *see also*, Exhibits 3 and 5.

72.     SPS failed to provide a proper response to the requests contained within RFI #2 within thirty (30) business days of December 10, 2024, that is, on or before January 28, 2025, in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E). *See* 12 C.F.R. § 1024.36(d)(2)(i)(A); *see also*, Exhibits 3 and 6.

73.     Through the Payoff Response, SPS partially responded to RFI #2, but failed to provide the servicing notes requested through RFI #2 as well as a complete transaction history for the Loan. *See* Exhibits 3 and 6.

74.     The only justification that SPS provided for not supplying information requested through RFI #2 was to state that if information was not provided, it was because it was privileged or proprietary. *See* Exhibits 3 and 6.

75.     SPS's claim that the requests for servicing notes and a complete transaction history for the Loan were not provided through the Payoff Response because such items are proprietary or privileged was not reasonable.

76.     Comment 1 to 12 C.F.R. § 1024.36(f)(1)(ii) provides illustrative examples as to what constitutes confidential, proprietary, or privileged information for the purposes of requests for information pursuant to 12 C.F.R. § 1024.36:

> Confidential, proprietary or privileged information may include information requests relating to, for example:
> i.   Information regarding management or profitability of a servicer, including information provided to investors in the servicer.

13

    ii.  Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account;

    iii.  Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or

    iv.  Information protected by the attorney-client privilege

Supplement I to Part 1024.

77.    The requests for servicing notes and request for a complete transaction history for the Loan, as contained in RFI #2 do not bear any resemblance to the types of requests the CFPB provides for illustrative purposes as to what constitutes a request that seeks proprietary or privileged information.

78.    SPS failed to send a proper response to the information requests contained in RFI #2in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E). *See* 12 C.F.R. § 1024.36(d).

79.    Had SPS appropriately responded to RFI #2, then Plaintiff would not have had to incur attorneys fees, costs, and expenses in order to prepare and submit NOE #2/RFI #3. *See*, Exhibits 3, 6 and 11.

80.    Through NOE #2/RFI #3, Plaintiff *again* requested information concerning the Loan, including servicing notes from a specific time frame and a complete transaction history for the Loan. *See*, Exhibit 9.

81.    Additionally, through NOE #2/RFI #3, Jones requested that SPS provide:

    a.  An explanation of a documentation establishing the deferred principal balance of $8,329.52 claimed due and owing on the Loan;

    b.  Any "Adjustment to Contract Rate" as described in the Loan and for each such adjustment, please provide the date of the adjustment, and the interest rate to which the contractual interest rate was adjusted; and,

     c.   The start date and end date for each "period of delinquency" as defined in the "Adjustment to Contract Rate" section of the Loan Repayment and Security Agreement for the Loan.

*See* Exhibit 9.

82.     SPS received NOE #2/RFI #3 at the Designated Address on or before February 14, 2025. *See*, Exhibit 9.

83.     Through the Response to NOE #2/RFI #3, SPS *again* failed to provide a complete transaction history for the Loan[3], and additionally failed to provide an explanation or documentation related to the deferred balance claimed due and owing and address the requests regarding the interest rates. *See*, Exhibit 11.

84.     The only justification that SPS provided for not supplying information requested through NOE #2/RFI #3 was to state *again* that if information was not provided, it was because it was privileged or proprietary. *See* Exhibits 11.

85.     SPS's claim that the requests for a complete transaction history for the Loan and for information about the interest rates charged on the Loan were not provided through the Response to NOE #2/RFI #3 because such items are proprietary or privileged was not reasonable.

86.     The requests for servicing notes and request for a complete transaction history for the Loan, as contained in RFI #2 do not bear any resemblance to the types of requests the CFPB provides for illustrative purposes as to what constitutes a request that seeks proprietary or privileged information.

---

[3] No transaction history was provided that covered the period covering December 16, 2004 through March 31, 2008

87.    SPS failed to send a proper response to the information requests contained in RFI #2in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E). *See* 12 C.F.R. § 1024.36(d).

88.    SPS's actions in relation to each of the RFIs constitute violations of 12 C.F.R. § 1024.36(c) and (d) and 12 U.S.C. § 2605(k)(1)(D) and (E) and have caused Plaintiff to suffer actual damages, as discussed, *supra*, including, but not limited to incurring attorneys' fees and postage costs associated with preparing and sending subsequent requests for information and notices of error, which would not have been necessary but for SPS's failure to timely and properly respond to each of the RFIs, and extreme emotional distress.

89.    Further, SPS's failures to comply with 12 C.F.R. § 1024.36(d) caused Plaintiff's attorneys' fees and costs associated with the preparation of each of the RFIs to metamorphose into damages. *Marais v. Chase Home Fin., LLC (Marais II)*, 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC (Marais I)*, 736 F.3d 711, 721 (6th Cir. 2013).

90.    SPS's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of SPS's obligations under RESPA and Regulation X.

91.    As a result of SPS's actions, SPS is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

92.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. § 2605(k)

### (Failure to properly respond to NOE #1 and NOE #3)

93.    Plaintiff restates and incorporates all of the allegations contained in paragraphs 1 through 58 in their entirety, as if fully rewritten herein.

94.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

95.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

96.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

97.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

98.     A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

99.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1) within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error. 12 C.F.R. § 1024.35(e)(3)(i)(C).

100.     NOE #1 and NOE #2 (collectively, the "NOEs") each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a written notice from Plaintiff that included her name, mortgage loan account number, and property address and asserts an error that she believed to have occurred. *See* Exhibits 7 and 10

101.     Through NOE #1, Jones asserted that SPS committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to return the rejected funds from the Attempted Payment. *See* Exhibit 7.

102.     SPS received NOE #1 at the Designated Address on January 22, 2025. *See* Exhibit 7.

103.     SPS sent the Response to NOE #1 through which SPS stated that the funds from the Attempted Payment "were returned on December 26, 2024" and that "SPS found no error in the handling of the funds". *See* Exhibit 8.

104.     That is, through the Response to NOE #1, SPS wholly failed to address the allegation that the funds were not returned and that only a photocopy of the cashier's check was returned.

105.     Through the Response to NOE #1, SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as SPS did not correct the errors alleged in NOE #1 and provide the date of the correction. *See*, Exhibits 7 and 8.

106.     Through the Response to NOE #1, SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as SPS's refusal to acknowledge and address the allegations that the funds

were not returned and that only a photocopy of the cashier's check was returned, which indicates that SPS failed to perform a reasonable investigation into the errors alleged through NOE #1.

107.    SPS failed to properly respond to the NOE in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k)(1)(C) and (E)

108.    Through NOE #3, Jones *again* asserted that SPS committed a covered error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to return the rejected funds from the Attempted Payment and that SPS failed to perform a reasonable investigation into NOE #1 as it failed to address the specific allegations that only a photocopy of the Attempted Payment was returned and that SPS has conflictingly stated on other occasions that the Attempted Payment was destroyed. *See* Exhibit 10.

109.    SPS received NOE #3 at the Designated Address on April 8, 2025. *See* Exhibit 10.

110.    Through the Response to NOE #3, SPS now claimed that the Attempted Payment was destroyed per SPS policy as indicated in the Rejection Letter, but the Rejection Letter states that a check will be destroyed if it was a "personal check", not a cashier's check such as the Attempted Payment. *See* Exhibit 12.

111.    That is, through the Response to NOE #3, it is evident that SPS did not conduct a reasonable investigation or properly correct the error with the Attempted Payment as it is admitting that it destroyed a cashier's check without returning the funds for the same to Jones. *See* Exhibit 12.

112.    SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(A) as SPS did not correct any errors as identified in NOE #3 and provide the date of the correction. *See* Exhibits 10 and 12.

113.    SPS did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as a reasonable investigation would, at the minimum, acknowledge that the Rejection Letter states that a "personal check" would be destroyed, but a cashier's check was issued for the Attempted Payment. *See* Exhibits 4, 10, and 12.

114.    As a result of SPS's actions, SPS is liable to Jones for actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

115.    SPS's failure to properly respond to the NOEs by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOEs constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and has caused Jones to suffer actual damages as detailed, *supra*. *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

116.    SPS's actions have caused Jones's attorneys' fees and postage costs associated with the preparation of the NOEs to metamorphose into damages. *See Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013).

117.    Additionally, Jones requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
## VIOLATIONS OF THE RMLA, R.C. 1322, *et seq.*

118.    Jones restates and incorporates all of the allegations contained in paragraphs 1 through 58 in their entirety, as if fully rewritten herein.

119.    SPS is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

120.    "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

121.    SPS is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

122.    SPS, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

123.    SPS is a registrant under the RMLA, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License Nos. RM.500912.000 and, *inter alia*, RM.500912.003, RM.500912.004, and RM.500912.005. R.C. 1322.01(HH).

124.    Jones is a "buyer" as defined by R.C. 1322.01(I), as she is an individual whose loan is serviced by a mortgage servicer, SPS.

**(R.C. 1322.40)**

125.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, cannot engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

126.    SPS's refusal to return the funds from the Attempted Payment and wrongfully destroying the cashier's check constitute improper or dishonest dealings in violation of R.C. 1322.40(C).

127.    SPS's failure to provide information requested by Plaintiff which would enable her to determine whether the amounts being claimed due and owing are proper and accurate, as described in Count One, constitutes improper or dishonest dealings in violation of R.C. 1322.40(C).

128.    SPS's failure to perform a reasonable investigation into the errors asserted by the NOEs, as described in Count Two, constitutes improper or dishonest dealings in violation of R.C. 1322.40(C).

129.    As a result of SPS's conduct, SPS is liable to Jones for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

**(R.C. 1322.45)**

130.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and: (2) Follow reasonable and lawful instructions from the buyer; (3) Act with reasonable skill, care, and diligence; [and] (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.] R.C. 1322.45(A).

131.    A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

132.    SPS's violations of RESPA and Regulation X constitute violations of R.C. 1322.45(A).

133.    SPS violated R.C. 1322.45(A)(2) by failing to return the funds from the Attempted Payment and wrongfully destroying the cashier's check.

134.    SPS violated R.C. 1322.45(A)(3) and (4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing by failing and refusing provide information requested by Plaintiff which would enable her to determine whether the amounts being claimed due and owing are proper and accurate

135.    SPS violated R.C. 1322.45(A), (A)(3), and (A)(4) by failing to act with reasonable skill, care, and diligence and in good faith and with fair dealing when investigating the errors asserted through the NOEs, as discussed, *supra*.

136.    As a result of SPS's conduct, SPS is liable to Jones for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Zenella Jones respectfully requests that this Court enter an Order granting Judgment against Defendant Select Portfolio Servicing, Inc. as follows:

A.  Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Three;

B.  Statutory damages of $2,000.00 per violation of RESPA as contained in Count One for a total of $6,000.00;

C.  Statutory damages of $2,000.00 per violation of RESPA as contained in Count One for a total of $4,000.00;

    D.  Costs and reasonable attorneys' fees as to Counts One through Three;

    E.  Punitive damages to the extent allowed by law for the allegations contained in Count Three; and,

    F.  Such other relief which this Court may deem appropriate.

**<u>JURY DEMAND</u>**

Plaintiff Zenella Jones respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff David B. Jones*